UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
CHARLES MAY,                                            :

                                                      :      07 Civ. 2176 (BSJ) (GWG)
               Petitioner,
   -v.-                                         :      REPORT AND
                                                            RECOMMENDATION
WARDEN,                                                 :

                                                      :
               Respondent.
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Charles May, an inmate in Camp Gabriels Correctional Facility in Gabriels, New York, petitions pro se for writ of habeas corpus pursuant to 28 U.S.C. § 2254. After a jury trial in New York County Supreme Court, May was convicted of third degree burglary and possession of burglar's tools, N.Y. Penal Law §§ 140.20 and 140.35, and sentenced to an indeterminate prison term of three to six years. For the reasons stated below, May's petition should be denied.

I.      BACKGROUND

      A.      Incident and Arrest

      In the early morning hours of August 28, 2004, Jeffery Olson was standing in front of the building for which he was the superintendent, at 1 East 16th Street in Manhattan. (Olson: T. 174-77).[1] He observed a man, later identified as Curtis Mitchell, attempt to pry open the door of a building located at 3 East 16th Street, (Olson: T. 179), while another man, later identified as May, held a cellular phone to his ear and looked up and down the street (Olson: T. 179-80, 220-

---

[1] See Transcript, filed Oct. 30, 2007 (Docket # 9). Docket # 9 contains both the trial and sentencing transcripts. We refer to the trial transcript as "T." and to the sentencing transcript as "S."

22).  When these men were unable to gain entry to 3 East 16th Street, they moved to 18 East 16th Street (the "building"), and were able to gain entry to this building.  (Olson: T. 181-85).  Olson then witnessed the men leave the building, but return about an hour later.  (Olson: T. 186-88).  At this point, Olson called 911 to report what he had witnessed.  (Olson: T. 189).  The police did not arrive until after the men left, so Olson got into the police car to help the police find the men.  (Olson: T. 190-91).  Olson spotted the men from the car.  (Olson: T. 191-92).  The police officers left the car and chased the men on foot, eventually apprehending them.  (Olson: T. 192-93).  May was carrying a backpack which contained latex gloves, brown gloves, a flashlight with batteries, and a screwdriver.  (Smyth: T. 289-91; Cao: T. 356).  Both men were initially charged with criminal trespass and possession of burglar's tools.  See Online Booking Sheet (annexed as Ex. 1 to Letter from Priscilla Steward, dated Mar. 28, 2008 (Docket # 15) ("Mar. 28 Letter")); Scratch 61 Complaint Report (annexed as Ex. 5 to Mar. 28 Letter).

The officer assigned to investigate the building, Viet Winston Cao, found the front door lock was loose, there were signs of forced entry on a third floor door, and desks were in disarray on the fourth floor.  (Cao: T. 359-60).  The officer, along with the building's superintendent, Jesus Munoz, also reviewed the surveillance tape that showed May and Mitchell pry open the front door, enter the building and elevator, and get off at the third, fourth and fifth floors before exiting the building, and then returning a second time to visit those floors.  (Munoz: T. 264-67; Cao: T. 360-61).

B.  Indictment, Conviction, and Sentence

On September 7, 2004, May and Mitchell were indicted on a charge of burglary in the third degree and possession of burglar's tools. See Indictment, dated Sept. 7, 2004 (annexed as Ex. J to Steward Declaration in Opposition to Petition for a Writ of Habeas Corpus, filed Oct. 30, 2007 (Docket # 8) ("Steward Decl.")) ("Indictment"). They were tried and convicted of those crimes by a jury on May 26, 2005. (T. 499-500).

On June 9, 2005, May was sentenced to an indeterminate prison term of three to six years on the burglary conviction, to run concurrently with a one year term on the conviction for possession of burglar's tools. (S. 18).

D.  The Missing Laptop

Following May's arrest, Officer Cao completed a police report in which he indicated that a laptop was missing. See Computer 61 Complaint Report, dated Aug. 28, 2008 (annexed as Ex. 4 to Mar. 28 Letter) ("witness states he observed perp(s) did removed [sic] prop (laptop) from location while they exit from main entrance"). At trial, Munoz, the superintendent of the building where the break-in occurred, testified generally about the condition of the building after the break-in, including testimony that someone had pulled the door and broken the handle on a storage closet, that desks were "messed up," with drawers open, and that someone had pulled the lock on the front door as if with a crowbar. (Munoz: T. 253, 262-63, 268-69). During cross-examination, Mitchell's attorney asked Munoz "Did you learn of a missing laptop computer?" (T. 271). Munoz testified that he "heard that something was missing." (Munoz: T. 271). Mitchell's attorney then asked, "So you weren't aware that it turns out no laptop was missing after all?" (T. 271). Munoz responded that he had no information on the topic. (Munoz: T.

3

271). May's attorney asked Munoz whether the police had ever told him that a laptop computer was missing. (T. 273). Munoz responded no, but that a tenant had. (Munoz: T. 273). Later on at trial, Cao testified that the owner of the laptop had discovered that it had been taken home by an employee and was never actually missing. (Cao: T. 359, 374).

Olson testified that at trial that he saw the burglars carrying a "laptop case." (Olson: T. 205-06). In the grand jury, however, he had testified that he saw "a laptop case with a laptop in it." (T. 205). In summation, Mitchell's attorney pointed out this inconsistency. (T. 443-44).

At sentencing, Mitchell's attorney noted that the pre-sentence report stated that May and Mitchell "stole a laptop," whereas the trial evidence did not show this. (S. 14). The court acknowledged this fact, adding: "All the focus on what wasn't accomplished inside the building misses the point . . . . The reason the legislat[ure] described the burglary idea the way it does, without requiring some precision about whether a specific crime occurred, is because going into places intending to commit crime scares people." (S. 15-16).

  C. <u>Appeal</u>

Proceeding <u>pro se</u>, May appealed his conviction arguing that (1) the jury's verdict was not supported by legally sufficient evidence; (2) the jury's verdict was against the weight of the evidence; (3) the grand jury proceedings were improper; (4) the indictment did not afford him fair notice of the charges against him; (5) the People failed to disclose <u>Rosario</u> material; and (6) he was denied effective assistance of trial counsel. <u>See</u> Brief for Pro-Se Defendant Appellant, dated Mar. 6, 2006 (annexed as Ex. A to Steward Decl.) ("May App. Brief"). The First Department affirmed his conviction on September 26, 2006. <u>See</u> <u>People v. May</u>, 32 A.D.3d 766 (1st Dep't 2006). May moved for reconsideration, but that motion was denied. <u>See</u> Order, dated

4

Sept. 26, 2006 (annexed as Ex. H to Steward Decl.). The Court of Appeals denied May leave to appeal on January 19, 2007. See People v. May, 8 N.Y.3d 847 (2007).

D. The Instant Petition

The Pro Se Office of this Court received May's petition on February 6, 2007. See Petition, filed Mar. 14, 2007 (Docket # 1) ("Petition"). The respondent submitted papers in opposition, see Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated October 30, 2007 (Docket # 24) ("R. Mem."); Steward Decl., and May submitted a reply, see Memorandum of Law in Opposition to the Respondent's Response to Petitioner's Original Petition, filed Aug. 1, 2008 (Docket # 21) ("May Mem.").

May makes the following arguments in support of his petition: (1) the trial court committed error in allowing the State to "amend the indictment before trial," Petition at 6,[2] and by "amending the factual allegations of the indictment," id. at 8; (2) the alleged amendment of the indictment deprived him of notice of the charges against him, id. at 6; (3) his sentencing was defective because the pre-sentence report contained a factual error, id. at 9; (4) the district attorney improperly presented perjured testimony to the grand jury, id. at 10; and (5) he was deprived of effective assistance of counsel at trial, id. at 10-11.

In December, May sent the Court a letter entitled "Motion 5(C) 28 U.S.C. § 2254" seeking to obtain grand jury minutes and other "Rosario material." Letter from Charles May, filed Aug. 1, 2008 (Docket # 20) ("May Motion"). In response, the Court ordered respondent to furnish copies of the "Rosario material" to the Court and May. See Order, filed Dec. 26, 2007

---

[2] The Court has added page numbers to the Petition.

(Docket # 12). Respondent mailed copies of the requested "Rosario material" to the Court with a cover letter dated March 28, 2008. See Mar. 28 Letter.

In the December 26 Order, the Court also directed respondent to make a submission to the Court complying with Rule 5(c) of the Rules Governing Section 2254 Cases in the United States District Courts, either producing the grand jury minutes, or explaining why the minutes were irrelevant and should not be produced. See Docket # 12. In a letter to the Court dated February 25, 2008, respondent asserted that "the grand jury minutes are not relevant to" May's claim that he did not receive adequate notice of the charges against him. Letter from Priscilla Steward, filed Aug. 1, 2008 (Docket # 19). As explained in section III.D, the Court agrees that the grand jury minutes are not necessary for the disposition of this petition, and thus there is no basis on which to order their production.

II. APPLICABLE LAW

    A. Legal Standard Governing Review of Habeas Corpus Petitions Brought Pursuant to 28 U.S.C. § 2254

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v.

Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001). As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited. See Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) (internal quotation marks omitted); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir.) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), cert. denied, 546 U.S. 889 (2005).

In Williams v. Taylor, the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405-06 (2000). Williams also held that habeas relief is available under the "'unreasonable application'" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been "objectively unreasonable." Id. at 409. When Supreme Court case law does not give a "categorical" or "clear answer" to the question presented in the state court, "it cannot be said that the state court unreasonably applied clearly

established Federal law." Wright v. Van Patten, 128 S. Ct. 743, 746-47 (2008) (internal quotation marks, bracketing, and citations omitted).

Habeas relief is also available from state court decisions based on "unreasonable" factual determinations. 28 U.S.C. § 2254(d)(2). "The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 127 S. Ct. 1933, 1939 (2007) (citing Williams, 529 U.S. at 410). Federal courts are to "presume" that state court factual determinations are correct, subject to rebuttal by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The presumption may also "be set aside if the material facts were not adequately developed at the State court hearing or if the reviewing court finds that the factual determination is not fairly supported by the record." Smith v. Mann, 173 F.3d 73, 76 (2d Cir. 1999) (citation omitted), cert. denied, 528 U.S. 884 (1999); accord Durden v. Greene, 492 F. Supp. 2d 414, 420 (S.D.N.Y. 2007).

Furthermore, under 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law. See, e.g., id. at 68.

B. Exhaustion

Before a federal court may consider the merits of a habeas claim, a petitioner is first required to exhaust his available state court remedies. See 28 U.S.C. § 2254(b)(1) ("An

8

application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."); accord Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 190-91 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984). To exhaust a habeas claim, a petitioner is required to have presented the federal claim to all levels of the state appellate courts. See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Picard v. Connor, 404 U.S. 270, 275-76 (1971); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991); Daye, 696 F.2d at 191. In New York, this means the defendant must first appeal his or her conviction to the Appellate Division and then seek a certificate granting leave to appeal from the Court of Appeals. See, e.g., Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir.), cert. denied, 544 U.S. 1025 (2005). Nonetheless, a court may deny an unexhausted claim. See 28 U.S.C. § 2254(b)(2).

      C.     Independent and Adequate State Grounds and Procedural Default

"Under the independent and adequate state grounds doctrine," a federal court must not review a habeas petition if the petition seeks relief from a state court decision that "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); accord Garvey v. Duncan, 485 F.3d 709, 713 (2d Cir. 2007). "This rule applies with equal force whether the state law ground is substantive or procedural." Lee v. Kemna, 534 U.S. 362, 375 (2002).

III.  DISCUSSION

    A.  Claim of Impermissible Amendment of Indictment

May claims that the trial court "committed . . . error . . . when it allow[ed] the people to impermissibly amend the indictment before trial," Petition at 6, and "by impermissibly amending the factual allegations of the indictment by the grand jury from petitioner exiting the building with a laptop computer to intent," id. at 8.  May goes on to explain that

> [t]he . . . charge [against him] was trespassing [u]ntil petitioner got to the court and the people alleged they had a complainant who[se] property was missing. Therefore, the misdemeanor complaint was revise[d] to a felony complaint with the factual allegations that petitioner enter[ed] a commercial building by using force and exit[ed] with a stolen laptop computer. . . . Simply put, the people['s] case was base[d] on petitioner exit[ing] the building with property[;] the people had no authority to try [petitioner] with intent the mere part of the burglary statute. . . . [T]he petitioner is stating that the factual allegation to the grand jury was misleading . . . .

Id. at 6-7.  May states further that

> [t]he people['s] intent theory wasn't in the factual allegations before the grand jury.  Moreover, the people never presented the alleged damage they presented at trial to the grand jury or no part of the record substantiated the alleged damage to support their newfound theory of intent.  Which is evident that their theory was larceny before the grand jury.

Id. at 8.  In his brief, May quotes LanFranco v. Murray, 313 F.3d 112, 119 (2d Cir. 2002), and asserts that "when a State Indictment specifies 'a set of factual allegations supporting a material element of a crime' charge[d] in the indictment, the people are not free[] to present factual allegation[s] that [were]n't presented [to] the grand jury."  May Mem. at 13.

    As LanFranco makes clear, however, "while the Fifth Amendment's grand jury indictment clause imposes certain constraints on prosecutions in federal courts, . . . this provision

of the Bill of Rights has not been incorporated against the states through the Fourteenth Amendment." 313 F.3d at 118. Thus <u>LanFranco</u> provides no basis for habeas relief.

On appeal, May raised a claim entitled "impermissably amending [sic] of the indictment." May App. Brief at 5. But it is impossible to tell what, if any, federal constitutional claim was being raised.

In any event, May is simply incorrect that his indictment was "amended" through the proof at trial. On his arrest, he apparently was charged with trespass and possession of burglar's tools. <u>See</u> Exs. 1 & 5 to Docket # 15. The actual indictment was for burglary and possession of burglar's tools. <u>See</u> Indictment. Contrary to the implication of the petition, the indictment makes no mention that a laptop or any other property was actually stolen. <u>See</u> <u>id.</u> In his petition, May asserts that the prosecution changed its "theory" of the crime from "larceny" before the grand jury, to "intent" at trial. Petition at 8. Grand jury proceedings, however, precede an indictment. Thus, any evidence presented to the grand jury regarding the theft of a laptop is irrelevant to whether the indictment was "amended" by the proof at trial.

Moreover, larceny is not a "theory" of burglary, but an entirely different crime. <u>See</u> N.Y. Penal Law § 155. In New York the crime of burglary does not require proof of larceny, theft, or any other crime. Instead, it requires proof only that the defendant "knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein." N.Y. Penal Law § 140.30; <u>accord</u> <u>DeVonish v. Keane</u>, 19 F.3d 107, 109 (2d Cir.) (<u>per</u> <u>curiam</u>), <u>cert.</u> <u>denied</u>, 513 U.S. 841 (1994). There is no evidence or even a suggestion that the petit jury that convicted May was given any charge to consider against May other than the crimes charged in the indictment.

B.      Claim of Insufficient Notice

In a related argument, May contends that his indictment gave him insufficient notice of the charges against him. Petition at 6. As the Second Circuit has stated, "[a]n indictment is sufficient when it charges a crime [1] with sufficient precision to inform the defendant of the charges he must meet and [2] with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." DeVonish, 19 F.3d at 108 (internal quotation marks and citation omitted). Further, "'[i]t is generally sufficient that the indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" Id. (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).

May claims that the prosecution's "[f]ailure to present the appropriate allegation to a grand jury and taking the case to trial without prior notice of [an] intent theory [prevented] the defense [from] devis[ing] and prepar[ing] a defense." May Mem. at 12. May makes reference to the fact that the prosecution presented evidence or argued to the grand jury that May stole a computer from the building he entered, Petition at 10; May Mem. at 16-18 – evidence that was contradicted at trial.

May's argument fails because the fact that the prosecution presented evidence of a stolen computer to the grand jury would not change the fact that May's indictment was only burglary and possession of burglar's tools – neither of which required a showing that anything was stolen. See Indictment. The Indictment gives the precise date and place of the burglary and the

possession of burglar's tools. The only charges submitted to the petit jury were these two charges. Plainly, the Indictment gave notice to May of the crimes he was accused of.

    C.    <u>Claim of Defective Sentencing</u>

May contends that he was not sentenced "on proper factual allegations," Petition at 9, in that the pre-sentence report erroneously stated that he had stolen a laptop. The respondent argues that the claim is unexhausted. R. Mem. at 11, 18.

The respondent is correct on this point inasmuch as May's brief to the Appellate Division did not address any issue regarding his sentencing. <u>See</u> May App. Brief. Nor was the issue raised in May's application seeking leave to appeal to the Court of Appeals. <u>See</u> Notice of Application Pursuant [to] CPL § 410.20, dated Sept. 23, 2006 (annexed as Ex. D to Steward Decl.). There is no point in staying the petition to allow May to exhaust this claim, however, since he has "already taken his one direct appeal, and this claim is procedurally barred from consideration in a collateral attack on his conviction" under N.Y. Crim. Proc. Law § 440.10(2)(c) (barring consideration on collateral review of record-based claims that the defendant unjustifiably failed to raise on direct review). <u>Jimenez v. Walker</u>, 458 F.3d 130, 149 (2d Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 976 (2007). In these circumstances, this claim is "procedurally defaulted" and may be raised now "only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'" <u>Clark v. Perez</u>, 510 F.3d 382, 393 (2d Cir. 2008) (quoting <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998)); <u>accord</u> <u>Jimenez</u>, 458 F.3d at 149. No such showing has been made here.

In any event, the claim would have to be denied on the merits. <u>See</u> 28 U.S.C. § 2254(b)(2). The Due Process clause requires

13

> (1) that a defendant not be sentenced based on materially false information, see Townsend v. Burke, 334 U.S. 736, 740-41, 68 S. Ct. 1252, 1255, 92 L. Ed. 1690 (1948); (2) that a defendant be given notice and an opportunity to contest the facts upon which the sentencing authority relies in imposing the sentence, see id. at 741, 68 S. Ct. at 1255; and (3) that a defendant not be sentenced based on a material misapprehension of fact, see United States v. McDavid, 41 F.3d 841, 843-44 (2d Cir.1995).

Torres v. United States, 140 F.3d 392, 404 (2d Cir.), cert. denied, 525 U.S. 1042 (1998). May has not shown a violation of the Due Process clause because the trial judge in his case explicitly stated that whether or not May stole the computer was irrelevant to his sentence and acknowledged that the claim that May had stolen the computer had been discredited. (S. 15-16).

### D. Claim that the District Attorney Improperly Presented Perjured Testimony to the Grand Jury

May claims that he was denied due process because the "assistan[t] district attorney . . . knowingly us[ed] perjurious testimony before the grand jury" concerning "property (laptop computer) that [was] allege[d]ly . . . in petitioner['s] bag." Petition at 10.

The Court is aware that May has sought production of the grand jury minutes in order to support this claim. See May Motion. There is no need for the production of such minutes, however, because even assuming the minutes reflect the error May asserts, they would have no bearing on this petition. This is because there is no federal constitutional right to a grand jury in a state criminal prosecution. See Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990). Thus, "claims of deficiencies in . . . state grand jury proceedings are [not] cognizable in a habeas corpus proceeding." Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) (citing United States v. Mechanik, 475 U.S. 66 (1986)); accord Dixon v. McGinnis, 492 F. Supp. 2d 343, 347 n.2 (S.D.N.Y. 2007). This rule applies to claims of perjury before a grand jury. See Brazeau v. Zon, 2007 WL 2903617, at *7 (W.D.N.Y. Oct. 1, 2007); Louis v. Fischer, 2007 WL 4198255, at *22-

14

23 (E.D.N.Y. June 25, 2007); Chacko v. United States, 2005 WL 1388723, at *6 (S.D.N.Y. June 8, 2005) (citing cases). Moreover, a subsequent conviction by a petit jury cures any defect in a grand jury proceeding. Mechanik, 475 U.S. at 70; accord Lopez, 865 F.2d at 33; Dixon, 492 F. Supp. 2d at 348. Thus, May's claim as to the grand jury cannot be heard on habeas review.

      E.      Claim of Ineffective Assistance of Counsel at Trial

May claims that he was denied effective assistance of counsel at trial because his lawyer (1) "fail[ed] to go to the building to investigate," (2) "wasn't prepared for the people['s] new found theory," referring to the alleged amendment of the indictment, (3) "fail[ed] to cross-examine the witnesses at trial [as] to their perjur[ious] testimony at the grand jury that they [saw] petitioner exit the building with a stolen laptop computer"; and (4) failed to object to the false statement in the pre-sentence report that a laptop was stolen. Petition at 11. May seems to have presented the first three of these claims on appeal. May App. Brief at 12-14. Regarding May's ineffective assistance claims, the First Department stated that they were "unreviewable on direct appeal because they involve matters outside the record," but that "[o]n the existing record, to the extent it permits review, we find that defendant received effective assistance under the state and federal standards." People v. May, 32 A.D.3d at 766-67. Respondent does not assert that there is any procedural bar or failure to exhaust with respect to any aspect of this claim. Accordingly, we address it on the merits.

To show ineffective assistance of counsel, a petitioner must satisfy both prongs of the two-part test articulated in Strickland v. Washington, 466 U.S. 668, 687-96 (1984). The Strickland test has been characterized as "rigorous" and "highly demanding." Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001) (internal quotation marks and citations omitted); see also Bell

v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (comparing a successful ineffective assistance of counsel habeas claim to "thread[ing] [a] needle"). To meet the Strickland standards, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness;" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694; accord Rompilla v. Beard, 545 U.S. 374, 381, 390 (2005); Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). In evaluating the first prong – whether counsel's performance fell below an objective standard of reasonableness – "'judicial scrutiny . . . must be highly deferential'" and the petitioner must overcome the "'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689).

With respect to the claim regarding his lawyer's failure to investigate, May argues that his attorney should have "go[ne] to the building to investigate because property wasn't appropriated out of the building" – apparently a reference to the laptop. Petition at 11. As already described, however, whether or not a laptop was taken has no bearing on any aspect of the case. Thus, it would have been pointless for counsel to have investigated the issue further. May also states that counsel should have "investigate[d] the conditions of the building." Id. But this is no basis on which to find counsel's conduct was deficient. There is no indication of what evidence would have been found at the building or what witnesses could have said that would have been helpful. See, e.g., McPherson v. Greiner, 2003 WL 22405449, at *25 (S.D.N.Y. Oct. 22, 2003) (rejecting claim of ineffective assistance based on attorney's failure to investigate because "speculation satisfies neither Strickland's deficient performance nor prejudice prongs").

16

In addition, any information obtained about the condition of the building could have had no effect on the verdict inasmuch as there was overwhelming evidence – based on Olson's testimony, Olson's identification, and the videotape evidence – that May entered the building and was carrying burglar's tools.

May's claim that his attorney wasn't prepared for the "people['s] newfound theory," Petition at 11, is based on the false premise that there was some new legal theory presented at trial. In fact, there was no new legal theory as both the indictment and the charges presented at trial were the same: burglary and possession of burglar's tools. See section III.A above. Accordingly, May's counsel was not ineffective in this regard.

May also asserts that his attorney "fail[ed] to cross-examine the witnesses at trial to their perjury testimony at the grand jury that they [had] seen petitioner exit the building with a stolen laptop computer." Petition at 11. This is apparently a reference to Olson's testimony before the grand jury that the robbers were carrying "a case with a laptop in it." (T. 205). Olson, however, was cross-examined on this inconsistency – minor though it was – by Mitchell's attorney. (T. 205-06). There was no need for May's attorney to repeat cross-examination on this point. As the Second Circuit has noted, "[d]ecisions about whether to engage in cross-examination, and if so, to what extent and in what manner are . . . strategic in nature and generally will not support an ineffective assistance claim." Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002). Such is the case here.

Finally, May's claim that his attorney was ineffective at sentencing for failure to address the presentence report's error with respect to the laptop fails because his co-defendant's lawyer pointed out this error (S. 14), and the trial judge specifically adverted to it (S. 15-16).

17

Conclusion

May's petition should be denied. In addition, his motion for production of grand jury minutes (Docket # 20) should also be denied.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Barbara S. Jones, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Jones. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: August 29, 2008
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Charles May
05A3300
Camp Gabriels Correctional Facility
P.O. Box 100
Route 86
Gabriels, NY 12939

Priscilla Steward
Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271